GARNEAU *v.* COMMISSION OF CITY OF CADILLAC.

ELECTIONS—MUNICIPAL CORPORATIONS—MAJORITY OF VOTES—COMMISSION FORM OF GOVERNMENT.

> The provisions of the Cadillac charter requiring that the candidate for any office who shall receive a majority of the first-choice votes for such office shall be declared elected, and if no candidate shall receive a majority of the first-choice votes, then the second-choice votes shall be added to the first-choice votes and the one receiving the largest number of combined first- and second-choice

votes shall be declared elected, etc., require a majority of all the votes cast for the office in order to elect; a plurality is insufficient even if none of the candidates receives a majority, where the charter expressly defines a majority as more than half the total votes cast.

Certiorari to Wexford; Lamb, J. Submitted June 9, 1914. (Calendar No. 26,214.) Decided July 24, 1914.

Mandamus by Theodore Garneau to compel the commission of the city of Cadillac, being the board of election canvassers of the city, to reconvene and declare him elected to the office of constable. From an order denying the writ relator brings certiorari. Affirmed.

*Gaffney, Miltner & Millington,* for relator.

*E. F. Sawyer,* for respondent.

BIRD, J. The city of Cadillac has a commission form of government. On the 10th day of February, 1914, an election took place at which a constable was to be elected. For that office there were three candidates—the relator, Charles H. Sinclair, and William Trey. Section 6 of article 5 of the charter provides that, where three candidates are to be voted for, the voters shall be given opportunity of expressing, not only their first choice, but their second choice. This provision was complied with. The canvassed vote showed the result to be:

|  | First-Choice. | Second-Choice. | Total Vote. |
|---|---|---|---|
| Relator | 419 | 79 | 498 |
| Sinclair | 382 | 108 | 490 |
| Trey | 335 | 148 | 483 |

No candidate appearing to have a majority of all the votes cast, the canvassing board determined that no one was elected. The board was guided in their

determination by section 10 of article 5 of the new charter, which provides that:

"The candidate for any office receiving a majority of first-choice votes cast for candidates for that office shall be declared elected. If no candidate shall receive a majority of the first-choice votes for such office, then the second-choice votes received by each candidate for such office shall be added to the first-choice votes for each such candidate, and the candidate receiving the largest number of first-choice and second-choice votes combined, if such votes constitute a majority, shall be declared elected. If no candidate shall have a majority, after adding the first-choice and the second-choice votes, the third-choice votes received by each candidate shall be added to the combined first-choice and second-choice votes received by such candidate and the candidate having the largest number of first-choice, second-choice and third-choice votes combined, shall be elected to such office, whether such number constitutes a majority of all the votes cast or not.   *   *   *

"Whenever the word 'majority' is used in the preceding section it shall mean more than one-half of the total number of votes cast at such election for the office in question."

The relator was not content with the result reached by the canvassing board, and he appealed to the circuit court for a writ of mandamus to compel the board to reconvene and declare him elected. After a hearing the trial court denied the application, and the matter was then removed to this court by a writ of certiorari. The sole question before us is whether the word "majority," as used in section 10, should be construed to mean "plurality." The relator's contention is that it should be so construed.

There are at least two serious difficulties which stand in the way of giving effect to the construction contended for by relator:

(1) The framers of the charter made it clear what meaning should be given to the word "majority" wherever used in that section. They, as though fear-

ing it would be misconstrued, construed it themselves by declaring in express language that it should *"mean more than one-half of the total number of votes cast at such election for the office in question."*

(2) It is evident from the language used in section 10 that two different rules were intended in determining the result. When three candidates are voted for, a majority rule is specified. When there are more than three candidates, a plurality vote will. elect. Should we now construe the word "majority" to mean "plurality," then the obvious distinction intended fades away, and a like rule obtains in both cases.

These and other considerations lead to the conclusion that the word "majority" was used to convey the meaning which is given to it by the lexicographers. To hold otherwise would be to do violence to the language used. If it is found that an "impossible" provision has been injected into the organic law of this simplified form of municipal government, it is for the people, and not for the courts, to correct.

The order of the trial court was right, and is hereby affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, MOORE, and STEERE, JJ., concurred.